UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RITA FLEMING,

                          Plaintiff,

           - against -

THE CITY OF NEW YORK, et al.,

                        Defendants.

**OPINION AND ORDER**

**01 Civ. 8885 (RCC) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Rita Fleming ("Fleming"), a former New York City Police Officer, brings this action against the City of New York, (the "City"); former Police Commissioners of the City of New York, Howard Safir and Bernard Kerik; and other current and former employees of the New York City Police Department ("NYPD"), (collectively, "defendants"), alleging that the practices within the NYPD promote policies that violated her constitutional rights under the First, Fifth, and Fourteenth Amendments and her civil rights under 42 U.S.C. §§ 1981 and 1983.

Before the Court is Fleming's motion to compel certain formatting specifications for computer data produced in this litigation, and her motion for sanctions against defendants. For the reasons which follow, Fleming's application for disclosure of the formatting specifications is moot. However, the application for sanctions against the City is **GRANTED** in the amount of $4,642.50 in costs and fees associated with this discovery request. From that total amount, Fleming's expert, Mr. Faust ("Faust"), will recover $1,100 in expert fees for his time and effort in attempting to analyze the data without the specifications, and Fleming's counsel, Ms. Meenan ("Meenan") will recover $3,542.50 in attorney's fees for her time spent in attempting to obtain

the City's compliance.

## II. BACKGROUND

Fleming commenced this action on October 3, 2001. On July 23, 2002, her counsel served the City with an initial set of interrogatories and requests for production of documents. The Court held an initial conference with the parties on September 24, 2002, and set a discovery deadline of December 6, 2002. Among her discovery demands for various NYPD internal records pertaining to race, gender, disciplinary action, and termination for probationary police officers, document request number 12 forms the basis for this discovery dispute.

Document request number 12 sought the production of a study, also produced in **Latino Officers Ass'n, Inc. v. City of New York** ("**LOA**"), 99 Civ. 9568 (LAK), that was conducted by the NYPD and reported by the New York Times on March 14, 1998. Fleming asserted that the data from this study were relevant to her claims and necessary for Faust to complete his analysis and expert report. Nearly four years after Fleming's initial request for this information, the City had failed to produce all the requested data and corresponding formatting specifications necessary to comply with this discovery request.

The City initially challenged the request for the NYPD report as overbroad because the study covers the years 1988 through 1996, and Fleming was employed by the NYPD from 1998 through 2000. Yet, the Court found the report relevant because "the large majority of the decision makers relevant to that report are also relevant to this case," and ordered the City to produce the document. Opinion and Order, December 3, 2002, Docket No. 27. On September 27, 2005, Fleming requested an update to the City's production that included data from March 2000 through September 2000 to cover the period that Fleming was employed by the NYPD.

The City stayed judicial intervention to enforce this discovery request by informing the Court that it would provide Fleming with the requested update. Yet, after months of debating whether the data existed, and if so, whether it could be retrieved in a readable format, the City did not comply with the request. On February 15, 2006, the Court ordered the City to produce the update to the **LOA** data within forty-eight hours. On March 3, 2006, the City finally produced those records pursuant to a protective order, which was signed on February 22, 2006.[1]

    Fleming contends that the City's March 3rd production could not be analyzed by Faust because it did not include the corresponding formatting specifications, and that counsel contacted the City by letter on March 17, March 22, and April 4, requesting those specifications. On April 14, 2006, after another intervention by the Court, the City responded by producing what it claimed were the revised formatting specifications. Upon examination, Faust found that those specifications did not correspond to the March 3rd data set, and he provided Meenan with a list of discrepancies between the data set and specifications. Meenan forwarded that list, along with a letter requesting the correct specifications, to the City's counsel, Ms. Switzer ("Switzer"), on May 4, 2006, yet received no response from the City. Finally, on June 6, 2006, Fleming requested judicial intervention once again, seeking an order to compel the production of the required formatting specifications and to sanction the City for its delay and failure to comply with discovery. As a result, the Court ordered both sides to appear on June 21, 2006, for a hearing on these issues, and stated that each side would be free to submit whatever supporting evidence and testimony for the record. Counsel were informed that if the issue had not been

---

[1] The City did not produce the update until the protective order was signed by the Court. The Court did not approve this delay.

resolved prior to the hearing, the losing party would be sanctioned and bear the cost of the hearing. The City did not produce another version of the formatting specifications until the day of the hearing.

At the hearing, Fleming argued that, even if the data produced that day fulfilled the Court's order, the dispute had resulted in excess time and costs, to which Faust was prepared to testify. Hearing Transcript ("Tr.") at 2. Although the City initially failed to bring in a witness to testify on the issue of compliance, it countered that an award of costs was not necessary because it had fully complied with discovery by producing the updated **LOA** data set in February 2006, the formatting specifications for the original **LOA** data set in April 2006, and a third production–the most recent update to those specifications. Tr. at 5-6. The City also asserted that the specifications the City produced in response to Fleming's current demands correspond to the original **LOA** data set and therefore should have permitted Faust to analyze the updated data. Tr. at 57. The Court eventually allowed the City to present a witness on the issue of the formatting specifications, and adjourned the hearing for fifteen minutes while counsel contacted their records person.[2] Mr. David Folds ("Folds") appeared to testify on behalf of the City.

### III. DISCUSSION

**A.    The Scope of Discovery**

Discovery is generally limited to any matter, not privileged, which is relevant to the subject matter involved in the pending action or appears reasonably calculated to lead to the

---

[2] During preliminary statements, Switzer stated that she misunderstood the purpose of the proceeding and was not prepared for an on-the-record hearing. Tr. at 5-6. Switzer indicated that a witness from the NYPD was on standby in One Police Plaza to make a record on the subject of the necessary formatting specifications, by phone or in person, if the Court so desired. Tr. at 6.

discovery of admissible evidence. FRCP 26(b). "Relevancy is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." **Carey v. Berisford Metals Corp.**, 1991 WL 44842, at *7 (S.D.N.Y. Mar. 28, 1991) (quotations and citation omitted).

As an initial matter, the data at issue here is relevant to Fleming's claims. Fleming alleges that the practices within the NYPD promote official policies and customs of 1) disparate treatment based upon race and gender; 2) harassment; and 3) retaliation against members of the NYPD, including probationary officers, who violate the "blue wall" of silence or seek redress of grievances against law enforcement authority while exercising their rights to free speech. Plaintiff's Amended Complaint at ¶ 1-3. Fleming initially sought data from the NYPD's 1998 study that analyzed the police department's internal disciplinary records for police officers by race and gender from 1988 through 1996. Letter from Colleen Meenan, Oct. 1, 2002, at 2. The study found that minority police officers are not only more likely to face disciplinary action by the police department, but also more likely to face harsher punishments. **Id**. Exh. A. In addition to data from the 1998 study, Fleming also sought an update for the period of March 2000 through September 2000, the period that Fleming was employed by the NYPD. Letter from Colleen Meenan, Sept. 8, 2002, at 2. The Court has found the data on disciplinary action and termination on probationary officers by race and gender relevant to Fleming's claims that there is a policy that results in disparate treatment, harassment, and retaliation. **Fleming v. City of New York**, 233 F. Supp. 2d 613, 615 (S.D.N.Y. 2002).

B.     The Formatting Specifications

The City's production of the updated **LOA** data, without the corresponding formatting specifications, does not satisfy the Court's February 2006 order. FRCP 34 provides for the production and inspection of "data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form." The Court has broad discretion in managing discovery. **Wills v. Amerada Hess Corp.**, 379 F.3d 32, 41 (2d Cir. 2004); **In re Fitch, Inc.**, 330 F.3d 104, 108 (2d Cir. 2003); **Cruden v. Bank of New York**, 957 F.2d 961, 972 (2d Cir. 1002). "Discovery is of broader scope than admissibility, and discovery may be had of inadmissible matters." **King v. Conde**, 121F.R.D. 180, 194 (E.D.N.Y. 1988). While the set of formatting specifications itself is not probative of Fleming's claims, they reveal how the data is organized within the data set. Without the specifications, Faust cannot prepare the expert analysis and report on the data. The Court intervened in response to Fleming's first request for revised specifications, viewing them as relevant items for discovery whose production was necessary for full compliance with the discovery order.

During the hearing, Faust testified that in order for him to analyze the data in this case he needed two things: (1) the entire data set; and (2) the formatting specifications, which reveal how certain data is organized and located within a data set. Tr. at 13. He explained that he had received the data set in the requested text format sometime in March 2006. **Id**. at 16. He could not perform his analysis without the missing formatting specifications. **Id**. at 17. Faust did not receive those specifications until about April 14, 2006, and when he did, they did not match the data in the March 3rd production. **Id**. at 18. When his attempts to locate certain variables on the

data set without the specifications failed, Faust compiled a list of the discrepancies between the data set and specifications and provided them to Meenan, who included them in her May 4, 2006 request to Switzer for revised specifications. **Id**. The City did not respond to that request, and Fleming sought the Court's intervention.

Meenan did not receive a response to this request until approximately one hour before the June 21st hearing, when she received a package containing disks and a letter from Switzer. **Id**. at 4-5. Included in that response was a letter, dated June 16, 2006, from Folds to Switzer, indicating that he had prepared an EXCEL version of the data set. Plaintiff's Exh. 3. In that letter, Folds explained that certain data fields are empty because the department decided to discontinue some fields in its upgrade to a new data system. **Id**. Because of this upgrade, the specifications for the updated **LOA** data produced in March 2006, do not match the specifications for the original **LOA** data set. **Id**. At the hearing, Switzer acknowledged that she did not provide the field names for the data set produced in March 2006. Tr. at 62. Folds admitted that if he had been given a data set without the layout, he too would have requested the formatting specifications. **Id**. at 64-65.

The City has persistently failed to comply with its discovery obligations in this case, impeding expert disclosure and unnecessarily prolonging discovery. In addition to the City's late disclosure of the updated **LOA** records after the forty-eight hour deadline, the City did not fully comply with the Court's February 15th Order because it failed to provide the corresponding formatting specifications until June 21st. Without those specifications, the data produced on March 3rd was not in a "reasonably useable form," as required by FRCP 34, and could not be analyzed by Faust to prepare his expert report. Moreover, the City failed to communicate any

reason for the delay to the Court or to Fleming, despite Fleming's numerous attempts to contact the City requesting the specifications. The City did not apprise the Court of any technical difficulties in translating the data from one program to another until the June 21st hearing, and Meenan received no word that another version of the specifications would be produced until approximately one hour before the hearing.

The Court finds that technical difficulties were not the ultimate cause for the City's failure to respond because those complications do not explain why Folds did not receive Fleming's request for revised specifications until June 14. Upon further questioning by the Court, Folds stated that, although he did not receive Faust's list of discrepancies or Meenan's May 4th request for revised formatting specifications until June 14th, he provided Switzer with a revised data set and specifications on June 16th. Folds's testimony indicates that had he been given Faust's request for revised specifications in a timely manner, he would have been able to produce the revised data set and specifications within approximately two days. The City has failed to provide adequate explanation or justification for its failure to produce the requested specifications until the day of the compliance and sanctions hearing. Because Meenan received a revised version of the formatting specifications on June 21st, Fleming's request for an order to compel production appears to be moot. However, the Court finds that monetary sanctions are warranted because the City's conduct has unduly impeded the progression of discovery and prevented the timely and effective prosecution of this action.

**C.     Monetary Sanctions**

The Court has broad discretion to impose sanctions for discovery misconduct. **Nat'l Hockey League v. Metro. Hockey Club, Inc.**, 427 U.S. 639, 643 (1976). FRCP 37(c)(1)

permits the Court to impose sanctions, including reasonable expenses and attorney's fees upon "[a] party that without substantial justification fails to disclose information required by Rule 26(a)." Before a court imposes sanctions pursuant to FRCP 37, the non-disclosing party must have violated a court order to produce. *See* **Daval Steel Prod. v. M/V Fakredine**, 951 F.2d 1357, 1363 (2d Cir. 1991). Because the City failed to comply with the Court's February 15th order and has not provided adequate justification for its failure, it is required to pay sanctions. Fleming requests sanctions in the amount of $1,100 for the time Faust expended in attempting to analyze the data produced without the formatting specifications, and $3,542.50 in attorney's fees for the time Meenan expended in seeking an order to compel discovery of the specifications and in bringing the instant application for sanctions. Colleen Meenan Fee Application, June 22, 2006 ("Meenan Fee App.").

### 1. Expert Fees

The Court has discretion to order the payment of reasonable expenses caused by failures to produce in discovery. FRCP 37(c)(1). Faust is set to testify as an expert witness on behalf of Fleming in this action, and he is required to prepare an expert report containing "a complete statement of all opinions to be expressed . . . the basis and reasons therefor . . . [and] data or other information considered by the witness in forming the opinions." FRCP 26(b)(2)B). A party may be sanctioned for its "failure to produce the documents necessary to facilitate the expert's review, particularly after multiple requests," especially where "extensive analysis of . . . statistical evidence" is required. **Evans v. Connecticut**, 24 F. App'x 35, 37 (2d Cir. 2001). Here, the City's unjustified failure to disclose the formatting specifications has caused Faust to expend additional time and effort in attempting to analyze the data. The Court has reviewed Faust's

submission and finds that the eleven hours he has spent since May 4th in his attempts to analyze the data to be reasonable. The Court also finds his rate of $100 per hour to be reasonable. Therefore the City is ordered to pay $1,100 for Faust's services associated with this discovery request.

### 2. Attorney's Fees

The amount of attorney's fees to be charged to the City for its non-compliance shall be determined by the lodestar analysis, whereby the number of billable hours are multiplied by counsel's reasonable billing rate. *See* **LeBlanc--Sternberg v. Fletcher**, 143 F.3d 748, 763-64 (*quoting* **Hensley v. Eckerhart**, 461 U.S. 424, 433 (1983)). Meenan requests a billing rate of $325 per hour. Among the factors the Court should consider in determining whether this rate is reasonable are "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." **Gierlinger v. Gleason**, 160 F.3d 858, 882 (2d Cir. 1998) (*quoting* **Blum v. Stevenson**, 465 U.S. 886, 896 n. 11 (1984)). Considering Meenan's years of practice in the field of employment discrimination and harassment since her admission to the bar in 1992, the Court finds a billing rate of $325 per hour reasonable within the range of fees charged other lawyers in this field.[3]

The hours billed are also reasonable. According to her submission, Meenan has expended approximately 10.9 hours since May 4th in pursuit of the revised formatting specifications. Meenan Fee App., Exh. B. The billing sheet enclosed with the submission indicates that these hours were spent preparing communications to Switzer requesting corrected

---

[3] This Court also finds persuasive the decision of Chief Judge Michael B. Mukasey, awarding Meenan an hourly rate of $325 per hour in attorney's fees for her demonstrated ability and skill in securing a positive jury verdict. *See* Meenan Fee App., Exh. C.

specifications, meetings with Faust to review the previous data and specifications and preparation for those meetings, legal research for submissions to the Court requesting judicial intervention and sanctions, and preparation for the June 21st discovery and sanctions hearing. **Id**. The Court has reviewed the submissions by counsel and finds that both the hours expended and billing rate are reasonable. Indeed, considering the time that this issue has been before the Court, an argument could be made that Meenan has expended considerably more time seeking compliance. Thus, the City is ordered to pay a total of $3,542.50 in attorney's fees associated with this discovery request. *See* **John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.**, 845 F.2d 1172, 1177 (2d Cir. 1988).

### IV. CONCLUSION

For the foregoing reasons, Fleming's application for the disclosure of the formatting specifications is moot, and Fleming's application for sanctions against the City is **GRANTED** in the amount of $4,642.50. From that total amount, Faust will recover $1,100 in costs and Meenan will recover $3,542.50 in attorney's fees. These amounts shall be paid by the City in accordance with directions from Ms. Meenan by August 31, 2006.

**SO ORDERED this 8th day of August 2006**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**